**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| G3 ENTERPRISES, INC., | No. 15-70597 |
| Petitioner, | STB No. FD 32760 |
| BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, | MEMORANDUM* |
| Petitioner-Intervenor, | |
| v. | |
| SURFACE TRANSPORTATION BOARD; UNITED STATES OF AMERICA, | |
| Respondents, | |
| UNION PACIFIC RAILROAD COMPANY, | |
| Respondent-Intervenor. | |

On Petition for Review of an Order of the
Surface Transportation Board

Argued and Submitted February 15, 2017
San Francisco, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: W. FLETCHER and RAWLINSON, Circuit Judges, and PRATT,[**] District Judge.

Petitioner G3 Enterprises, Inc. ("G3") and Petitioner-Intervenor BNSF Railway Company ("BNSF") petition for review of a decision of the Surface Transportation Board ("STB") denying their Joint Petition for Enforcement of *Decision No. 44*. We have jurisdiction under 28 U.S.C. §§ 2321(a) and 2342(5), and we affirm.

We review STB decisions under the standard set forth in the Administrative Procedure Act. *DHX, Inc. v. Surface Transp. Bd.*, 501 F.3d 1080, 1086 (9th Cir. 2007). We will affirm a decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

First, G3 and BNSF argue that the STB should have required Union Pacific ("UP") to provide reciprocal switching because such a condition is required by various statutory provisions and the STB's merger-competition policy. G3 and BNSF waived this argument by failing to raise it before the STB. *N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1081 (9th Cir. 2011). The argument also fails on the merits. For example, 49 U.S.C. § 11324 merely requires

---

[**] The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

that the STB "*consider . . .* whether the proposed transaction would have an adverse effect on competition among rail carriers in the affected region or in the national rail system." 49 U.S.C. § 11324(b)(5) (emphasis added). The STB clearly fulfilled this requirement by assessing the competitive effects of the merger between UP and Southern Pacific ("SP") in *Decision No. 44*. *See Union Pacific/Southern Pacific Merger,* 1 S.T.B. 233 (1996) (*Decision No. 44*). The other statutory provisions cited by G3 and BNSF and the merger-competition policy also express a general policy of preserving rail competition but contain no provisions that mandate two-rail access for all shippers.

Second, the STB did not abuse its discretion in concluding that there are no conditions in *Decision No. 44* that entitle G3 and BNSF to reciprocal switching. All parties agree that the G3 Facility was not a 2-to-1 point at the time of the merger between UP and SP; thus, the BNSF Agreement's protections for 2-to-1 points do not apply to the facility. Further, the STB reasonably declined to read *Decision No. 44* as mandating two-rail access for all shippers, because merger conditions are designed to remedy only those harms directly caused by a merger. *See, e.g., Decision No.* 44, 1 S.T.B. at 418 (noting that merger conditions "must address an effect of the transaction" and that the Board "will not impose conditions to ameliorate longstanding problems which were not created by the merger")

3

(internal quotation marks omitted); *S. Pac. Transp. Co. v. I.C.C.*, 736 F.2d 708, 722 (D.C. Cir. 1984) (stating that a party's proposed conditions were properly denied because they "were not designed to mitigate any anti-competitive consequences stemming directly from the consolidation"). G3's assertion that it should be entitled to the same conditions imposed on various 3-to-2 points in *Decision No. 44* is similarly unavailing. Neither Procter & Gamble, nor G3 raised any such argument during the merger proceedings, and it would not be arbitrary and capricious for the STB to treat parties that intervene at the time of the merger differently from those that seek conditions many years later. The STB could reasonably have concluded that the specific conditions imposed in *Decision No. 44* to protect particular 3-to-2 points cannot now be enforced to benefit G3.

Finally, G3 and BNSF argue that *Decision No. 44*'s representations condition entitles them to reciprocal switching. However, UP's statements to the Modesto & Empire Traction Company ("MET") indicated only that UP would not close customers listed on UP's Reciprocal Switching Circular. Thus, the STB did not abuse its discretion in concluding that these representations did not extend to G3. The STB also reasonably concluded that UP's broad assertions about the merger's procompetitive effects were not enforceable promises to maintain two-rail access for all shippers.

**AFFIRMED.**

4